IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TIFFANY FOLEY NISTON, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00862-OLG |
| | § | |
| vs. | § | |
| | § | |
| MARTIN O'MALLEY, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This report and recommendation concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). By this appeal Plaintiff argus the administrative law judge ("ALJ") erred in finding she was capable of work at the light exertional level despite her pain symptoms and migraines and failed to properly evaluate her mental limitations in determining her capacity for work. The undersigned held a hearing on the issues raised in this appeal on May 13, 2024, at which counsel for both parties appeared.

After considering Plaintiff's Original Brief [#12], Defendant's Brief in Support of the Commissioner's Decision [#13], Plaintiff's Reply Brief [#15], and the transcript ("Tr.") of the administrative proceedings [#7], the applicable case authority and relevant statutory and regulatory provisions, the arguments of counsel at the hearing, and the entire record in this

1

matter, the undersigned concludes that the Commissioner did not commit any reversible error in the underlying administrative proceedings and that substantial evidence supports the Commissioner's decision denying disability benefits.  It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be affirmed.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.  Legal Standard

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents her from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual and Procedural Background

Plaintiff Tiffany Foley Niston filed her application for DIB in January of 2021, alleging disability beginning October 1, 2017.  (Tr. 168.)  At the time of her DIB application, Niston was 44 years old and had a GED and work experience as a file clerk, fast food manager, and truck driver.  (Tr. 168, 196–97.)  The medical conditions upon which Niston based her DIB application were chronic nerve pain, Tarvlov cysts in her spine, migraines, vertigo, disequilibrium, vision affected by migraines, depression, anxiety, morbid obesity, and cognitive decline.  (Tr. 195.)

The Social Security Administration ("SSA") denied her application on November 5, 2021, and again upon reconsideration on May 4, 2022.  (Tr. 66–86.)  Following the denial of her claim, Niston requested an administrative hearing.  Niston, her attorney, and a vocational expert attended the administrative hearing before ALJ Dwight Wilkerson on October 22, 2022.  (Tr.

38–65.)  At the hearing, Niston testified that she stopped working as a truck driver in 2017 due to migraines, vertigo, and back pain, which were causing difficulties sitting and with concentration, focus, and remembering simple tasks.  (Tr. 43–44.)  Additionally, Niston testified that her migraines—with their accompanying blurry vision and vertigo—make it impossible to drive. (Tr. 49.)  At the ALJ's hearing, Niston also described her difficulty sitting due to issues with her legs and feet and the need to constantly switch positions to try to get comfortable due to back pain.  (Tr. 46.)  Niston testified that she can only stand for about ten minutes without experiencing excruciating back pain and also has difficulty holding objects more than ten pounds.  (Tr. 46–47.)

The ALJ issued an unfavorable decision on December 19, 2022.  (Tr. 20–33.)  The ALJ found that Niston met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Niston did not engage in substantial gainful activity between October 1, 2017, through the date of last insured.  (Tr. 21.)  At step two, the ALJ found Niston to have the severe impairments of degenerative disc disease, obesity, migraines, and depression.  (*Id.*)  At step three, the ALJ found that Niston's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations to render her presumptively disabled. (Tr. 22.)  The ALJ considered Listing 1.15 for disorders of the spine and Listing 12.04 as to depression, applying the psychiatric review technique and evaluating Niston's mental impairments under the Paragraph B criteria.[2]  (Tr. 22–24.)  The ALJ concluded Niston has

---

[2] The Paragraph B criteria are four functional areas utilized for evaluating mental impairments at all levels of the administrative review process:  (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).

moderate limitations in concentration, persistence, and pace and mild limitations in the other three functional areas. (*Id.*)

Before reaching step four of the analysis, the ALJ found Niston retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b)—meaning Niston can lift and/or carry 20 pounds occasionally and 10 pounds frequently and can stand, walk, and sit six hours in an eight-hour workday with several additional non-exertional physical limitations. (Tr. 24.) As to Niston's mental limitations, the ALJ found that she is "able to understand, remember, and carry out simple and detailed instructions" but only "in a lower stress work environment, without strict quotas, a fast pace, frequent changes, or frequent interaction with the public." (Tr. 24–31.)

At step four, the ALJ found that Niston is unable to perform any of her past relevant work. (Tr. 31.) At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Niston can perform, such as office helper, photocopy machine operator, and mail clerk. (Tr. 31–32.) Accordingly, the ALJ determined that Niston is not disabled for purposes of the Act, and therefore not entitled to receive DIB. (*Id.*) Niston requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on May 16, 2023. (Tr. 1–6.) On July 12, 2023, Niston filed the instant case, seeking review of the administrative determination.

## IV. Analysis

Niston's appeal raises two primary points of error, both of which challenge the ALJ's RFC. First, Niston argues the ALJ did not articulate a rational basis for concluding that she could perform light work on a continuous and daily basis despite her pain symptoms and migraines. Second, Niston argues the ALJ submitted his own perception of the medical facts and

cherry-picked conclusions from multiple sources, rather than adopting any treating physician's opinion in full, especially as to Niston's mental impairments of depression and anxiety. Neither of these arguments is a basis for reversing the ALJ's decision.

**A.    The ALJ did not err in evaluating the effects of Niston's pain and migraines on her RFC.**

Niston argues that she presented reliable testimony and medical evidence that she is in constant pain due to back pain and migraines, and the ALJ failed to provide a rational basis for finding she could perform light work on a regular and continuing basis despite this pain. This argument seems to encompass two challenges to the RFC. First, Niston contends that the ALJ failed to adequately evaluate her pain symptoms and migraines, and second that the ALJ's overall RFC for light work was not reasonable based on the totality of the evidence.

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)). However, the substantial evidence standard is cabined by a reasonableness requirement. If the ALJ's stated

reasons for reaching her conclusion could not be accepted by "a reasonable mind," there is not substantial evidence to support the ALJ's denial of benefits. *Newton*, 209 F.3d at 452.

As to evaluating pain, the regulations provide that when making a disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929. The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility if a credibility determination is necessary. *See Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008) (per curiam).

At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). At step two, the ALJ evaluates the intensity and persistence of an individual's symptoms such as pain and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *4. In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.* The governing regulations include several specific factors to be considered when evaluating alleged symptoms, such as pain: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the

claimant has taken or takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on one's back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although the ALJ is not required to enumerate and discuss each factor in evaluating a claimant's subjective symptoms, the ALJ's decision must be "sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001) (finding that the context of the ALJ's decision reflected adequate consideration of a regulatory factor: use of pain medication)).

Here, the ALJ cited the governing regulations regarding pain, noting that Niston claims she is disabled due to chronic nerve and back pain and frequent migraine headaches.  The ALJ then considered both the objective medical evidence regarding Niston's back pain and migraines, as well as Niston's testimony about her pain, and assessed Niston with an RFC of light work with additional non-exertional and mental limitations.  (Tr. 25–29.)  The ALJ did not err in considering the evidence of Niston's pain or migraines, and substantial evidence supports his conclusion that she could perform a modified range of light work despite these physical impairments.

The record contains the following evidence as to Niston's migraines and back pain. Niston established care in October 2020 at University Health Inwood Family Medicine Clinic with Dr. Karen Shimotsu due to recurring daily migraines and for a referral to a neurologist due

to associated symptoms of facial numbness, slurred, speech, shooting pain, dizziness, and vertigo.  (Tr. 26, 557–58.)  Niston's physical examination at this initial appointment was unremarkable, and Niston was evaluated as having normal reflexes, coordination, orientation, and behavior, and no motor weakness or cranial nerve deficit.  (Tr. 26, 559.)

Dr. Shimotsu completed a medical source statement on October 22, 2020, after this first visit.  (Tr. 696–97.)  In the statement, Dr. Shimotsu opined that Niston was unable to work due to disability but that the disability was not permanent and only expected to last six months or less.  (Tr. 696.)  Dr. Shimotsu found that Niston could not concentrate due to headaches, could not drive due to vertigo, and could only sit for four hours a day with less than two hours of keyboarding due to migraines.  (*Id.*)

The following month, Niston had a neurology appointment at University Hospital General Neurology, at which she described both her migraine symptoms and numbness and tingling in her bilateral extremities.  (Tr. 561–63.)  The neurologist performed an examination and found Niston to be alert and oriented and to present with normal attention, concentration, speech, facial sensation, muscle tone, strength, deep tendon reflexes, and gait.  (Tr. 562.)  There were no abnormal examination findings, but the neurologist diagnosed Niston with migraine with aura (sensory disturbance/vision changes) and paresthesia (skin tingling) and started her on two medications for the pain and symptoms.  (Tr. 563.)  The neurologist also ordered MRIs of Niston's brain and cervical and lumbar spines.  (*Id.*)

Niston had the MRIs performed in December 2020.  (Tr. 568–72, 585.)  The brain MRI was normal, aside from a finding of minimal chronic microvascular ischemic disease.  (Tr. 585.) The back MRIs were also predominantly normal, aside from a finding of mild degenerative disc

changes, mild disc bulge, mild neuroforaminal narrowing, and multiple benign Tarlov cysts on the sacrum. (Tr. 569–70, 585.)

Niston had a follow-up appointment in January 2021, at which she complained of back and abdominal pain, but the findings upon examination were also for the most part normal aside from Niston exhibiting lumbosacral tenderness upon palpation to her lower spine. (Tr. 573–74.) Niston was referred to pain medicine for her lower back and sacral pain due to her Tarvlov cysts. (Tr. 574.)

In April 2021, Niston presented at University Hospital for a neurosurgery evaluation regarding the sacral Tarvlov cysts and constant low back pain and tingling in the extremities. (Tr. 581–83.) Treatment notes listed three medications for migraines. (Tr. 582.) The examination again was unremarkable aside from noting point tenderness to the low and mid-lumbar spinal muscles. (*Id.*) Again, Niston exhibited a normal range of motion, full strength in both upper and lower extremities, intact sensation, and normal mental orientation. (Tr. 582–83.) Surgery was not recommended to address the Tarvlov cysts due to the complexity of the surgery and the fact that Niston had tried "little conservative management" (such as injections or physical therapy) so far for her pain. (Tr. 583.)

In May 2021, Niston visited the emergency room due to tremors and slurred speech, which were discovered to be a result of her abrupt cessation of prescription medication after she had difficulties refiling the prescription. (Tr. 26–27, 529.) A CT scan of Niston's brain during the visit was negative for any intracranial abnormality, and a brain MRI ruled out any incidence of stroke. (Tr. 532.) Niston was diagnosed with complicated migraine and acute drug withdrawal. (*Id.*) Niston was given refills on her prescriptions, and she was discharged in stable condition after a one-night stay. (Tr. 532–33.) During this visit, Niston was again found to be

alert and oriented with no sensory or strength deficits, normal range of motion, and intact cranial nerves.  (Tr. 533.)

Almost one year later in April 2022, Niston had an office visit regarding her migraines at University Health North Family Medicine clinic to establish care.  (Tr. 28, 685–87.)  At this visit, she complained of back pain, migraines, and neck pain, but the examination was again normal.  (*Id.*)  Niston was referred to neurology and pain medicine for further treatment.  (Tr. 687.)

In May 2022, Niston had a neurology evaluation at University Health Inwood Neurology with Dr. Pearl Jones, at which she described persistent daily headaches and complained that her prior medications had not been successful at eradicating her pain.  (Tr. 28, 688.)  Her examination was again normal as to sensation, strength, movement, muscle tone, reflexes, and gait.  (Tr. 691.)  The decision was made to taper off the gabapentin and to start a new drug and for further follow up after labs.  (Tr. 692.)

Dr. Shimotsu completed another medical source statement in June 2021 and again opined that Niston suffered from a non-permanent disability expected to last six months or less. (Tr. 698.)  This statement again found Niston only capable of standing/walking for two hours a day and sitting for four hours a day due to pain and imposed exertional limitations of lifting and carrying no more than 10 pounds for no more than one hour a day.  (*Id.*)

After summarizing these medical records, the ALJ concluded that the medical evidence did not substantiate Niston's allegations of disabling pain.  (Tr. 28.)  In reaching this conclusion, the ALJ emphasized the predominantly normal physical examinations throughout the medical records, the conservative treatment of her pain, and Niston's ability to engage in many activities of daily living, such as caring for pets, preparing meals, performing household chores like

laundry and dishwashing, shopping for groceries, managing finances, and pursuing hobbies.  (Tr. 25, 28.)  The ALJ also specifically addressed the two medical source statements by Dr. Shimotsu and found them unpersuasive in light of their lack of reliance on any objective medical findings or imaging studies; their inconsistency with Niston's normal examinations documenting intact sensation, 5/5 motor strength, and normal gait; the mild imaging findings in the record; and Niston's ability to engage in ample activities of daily living.  (Tr. 28.)

The ALJ did not err procedurally in evaluating Niston's pain symptoms or in evaluating the persuasiveness of Dr. Shimotsu's opinions.  20 C.F.R. § 404.1520c addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's RFC.  Under this regulation, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency.  *Id.* § 404.1520c(b)(2).  In assessing the weight to give each medical opinion in the record, the ALJ must articulate how persuasive she finds each opinion and explain her conclusions with regard to the supportability and consistency factors.  *Id.*  "Supportability" means the extent to which a provider supports his medical opinion or prior administrative medical finding by "relevant . . . objective medical evidence and . . . explanations," whereas "consistency" means the extent to which the medical opinion or finding is "consistent with the evidence from other medical sources and nonmedical sources" in the record.  *Id.* § 416.920c(c)(1)–(2).

The ALJ addressed both the supportability and consistency factors, clearly articulated the reasons for rejecting Dr. Shimotsu's disability opinions, and reached reasonable conclusions regarding the persuasiveness of those opinions in light of the entire record.  Niston argues the ALJ failed to take into account the findings of the various MRIs in the record, particularly

Niston's brain MRI, but this assertion misrepresents the record. The ALJ repeatedly noted the "mild imaging findings" in his opinion, citing specifically to a record summarizing all three MRIs (brain and spine) when rejecting Dr. Shimotsu's opinions. (Tr. 29, 585.) The ALJ also emphasized that the CT scan of Niston's brain during her emergency room visit was negative for any intracranial abnormality and the brain MRI "revealed no acute intracranial pathology and only minimal chronic microvascular ischemic disease." (Tr. 26, 28.)

Finally, Niston generally claims that the ALJ should have further developed the record by seeking additional neurological opinions on the effect of her migraines on her productivity. This claim is also not a basis for reversible error. "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The ALJ discharges this duty by making inquiries into the claimant's medical condition, questioning the claimant at the hearing about her impairments, and inquiring as to whether she desires to present additional evidence or testimony. *See Gonzalez v. Barnhart*, 51 Fed. App'x 484, at *1 (5th Cir. 2002). "Generally, however, the duty to obtain medical records is on the claimant." *Id.* (citing *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981)). A consultative examination is required to develop the record only if the record establishes that an examination is necessary to enable the ALJ to make the disability decision. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). And, importantly, this Court will only reverse an ALJ's decision for failure to fully and fairly develop the record where a claimant can show she was prejudiced, here by showing prejudice due to the lack of any additional neurological opinion on the limiting effects of her migraines. *Rivera v. Barnhart*, 64 Fed. App'x 416, at *1 (5th Cir. 2003).

Niston has not carried her burden to demonstrate that the ALJ failed in his duty to fully and fairly develop the record or that she was prejudiced by the lack of an additional neurological consultative examination.  As noted, the record contains three neurology records—records from two neurology appointments in November 2020 and May 2022 and a neurosurgery evaluation in April 2021—and two medical source statements from her treating neurologist.  Examinations conducted at these appointments resulted in predominantly normal and unremarkable findings. Niston has not articulated why she believes she could have and would have adduced additional evidence through a neurological examination that might have altered the result of her disability claim.  In summary, the ALJ did not err in evaluating Dr. Shimotsu's medical source statements or in assessing the extent of Niston's limitations from pain associated with her spinal issues and migraines.

Furthermore, substantial evidence supports the ALJ's conclusion that Niston was capable of modified light work despite her pain and migraines.  Niston argues this conclusion is unsupportable because the ALJ failed to articulate why she could work on a regular and continuous basis at the light exertional level, i.e., how she would be able to lift up to 20 pounds and frequently lift 10 pounds despite her back problems and walk/stand six to eight hours of the workday.  Niston directs the Cour to the cervical and lumbar MRI records and notations in the medical records that her back was tender upon palpation and she had an abnormal gait.

Yet Niston overemphasizes the significance of the MRIs, which documented only mild spinal degeneration and identified benign Tavlov cysts, which were recommended to be treated with "conservative pain management," such as physical therapy and medication.  (Tr. 569–70, 585.)  Although there are consistent notations in the record of spinal tenderness, these same records are also accompanied by notations that Niston has full strength (5/5) in all four

extremities and muscle groups and good range of motion.  (Tr. 303, 367, 368, 373, 582, 603, 637, 652, 653.)  The references to abnormal or "guarded" gait are sporadic (Tr. 368, 371, 373, 375, 377, 409, 411, 413, 603, 637) and outweighed by numerous notes of normal and steady gait (Tr. 379, 381, 383, 385, 387, 389, 391, 393, 395, 397, 399, 401, 403, 405, 407, 409, 411, 427, 431, 562, 567, 583, 653, 591).  The ALJ recognized the conflicts in the record in his opinion, and he was entitled to resolve them.  *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  His opinion states that "the record does evidence some objective abnormalities throughout the course of the claimant's treatment, [but that] the claimant generally presented with preserved physical functioning on exams, including evidence of intact sensation, 2+ reflexes, normal coordination, negative straight leg raise, 5/5 motor strength, and normal gait on serial exams."  (Tr. 29.)

Again, Niston bears the burden of producing evidence demonstrating that her impairments result in disabling limitations such that she cannot work on a continuous and regular basis.  *Greenspan*, 38 F.3d at 237.  Substantial evidence supports the ALJ's finding that Niston's spinal impairments prevent her from performing more than light work but did not render her completely disabled.

**B.**    **The ALJ did not err in evaluating Niston's mental impairments.**

Niston next argues the ALJ erred by substituting his own perception of the medical facts, ignoring the findings of various medical experts, and failing to adopt any single medical opinion in full, particularly as to her mental impairments.  This argument is also without merit.

As a preliminary matter, the ALJ is not required to "adopt a specific physician's assessment" so long as substantial evidence supports the RFC.  *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam); *see also* 20 C.F.R. §

404.1520c(a) (ALJ not required to defer to any medical opinions); *West v. Kijakazi*, No. H-21-2395, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022) (even though ALJ found every medical opinion unpersuasive, remand was not appropriate because "substantial medical and psychological evidence" supported the ALJ's conclusions), *adopted by* 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022).  That the ALJ found certain parts of various opinions persuasive and rejected others is not in itself a basis to reverse the Commissioner's decision.

The only medical opinion Niston specifically addresses in this section of her brief is the opinion of Paul McCollum, Ph.D., the consultative psychological examiner.  Niston argues the ALJ erred in rejecting Dr. McCollum's opinion.  The undersigned disagrees.

Dr. McCollum conducted a psychological examination of Niston in September 2021 to evaluate her depression.  (Tr. 619.)  According to Dr. McCollum's report, Niston reported frequently feeling sad and frustrated, as well as suffering from sleep disturbance and irritability, but was not currently receiving any counseling for mental health issues or taking any psychotropic medications. (Tr. 620–21, 626.)  During the exam, Dr. McCollum conducted a number of intelligence, comprehension, and reasoning tests and concluded that Niston had normal focus and concentration, adequate memory, and overall average intellectual functioning. (Tr. 623–27.)   Dr. McCollum also noted that Niston exhibited a pleasant outlook in the interview; that her emotional expression was within normal limits; and that she maintained an "open, friendly facial expression, and good eye contact."  (Tr. 620, 626.)  As to suicide attempts and ideations, Dr. McCollum stated that Niston did not report any serious feelings of hopelessness, had no previous suicide attempts, had no current thoughts of suicide, but had some thoughts in the past that "life is not worth living," but without intent or plan.  (Tr. 620, 626–28.) Dr. McCollum diagnosed Niston with major depressive disorder, recurrent and moderate, and

gave her a fair prognosis. (Tr. 628.) As to limitations in her functional capacity, Dr. McCollum opined that Niston is able to understand, carry out, and remember complex instructions; can sustain concentration and persist in work-related activity but not at a reasonable pace; needs support from others in order to interact socially with supervisors, coworkers, and the public; and can deal only with minimal pressures in a competitive work setting. (*Id.*)

The ALJ considered Dr. McCollum's opinions and found some of them to be too restrictive and others to be not restrictive enough. (Tr. 30–31.) As to following instructions, the ALJ concluded there was no support in the examination for Dr. McCollum's finding that Niston could carry out complex instructions (as she exhibited some impairment as to information recall) and therefore imposed more restrictive limitations to semi-skilled work. (Tr. 30.) As to Niston's inability to sustain concentration at a reasonable pace, the ALJ found that this conclusion conflicted with Dr. McCollum's examinations, which evidenced normal focus and concentration and was consistent with the ample evidence of normal concentration and attention at Niston's clinical visits throughout the treatment records. (Tr. 30, 430, 562, 690.) The ALJ also rejected Dr. McCollum's finding that Niston needs support to interact with others, as she had positive rapport with the examiner, which was also consistent with notations of Niston's cooperative behavior and stable mood throughout the course of her treatment. (Tr. 30, 278, 368, 427, 567, 582, 583, 653.) Finally, the ALJ rejected Dr. McCollum's finding that Niston could only deal with minimal pressures in a competitive work setting, noting that Niston reported engaging in numerous activities of daily living, had no history of hospitalization or decompensation, and denied suicidal ideation repeatedly at exams. (Tr. 30–31.) The ALJ properly considered the supportability and consistency factors and articulated his bases for rejecting the various aspects of Dr. McCollum's opinion as to Niston's mental limitations.

Niston takes issue with the ALJ's description of the evidence regarding her suicidal ideations in rejecting Dr. McCollum's opinion that she could only deal with minimal pressures in a competitive work setting. Niston points to a notation in a June 2021 record at a telehealth visit that she had thought of suicide (thoughts that lasted a few minutes) but did not have an intent or plan to commit suicide. (Tr. 597.) Although the ALJ did not specifically reference this medical record in his opinion, the medical record is consistent with the report Niston gave Dr. McCollum at the consultative examination: she was not currently suicidal, did not have an intent or plan to commit suicide, but had previously had thoughts about suicide and feelings that life was not worth living. (Tr. 620, 626–27.) The ALJ is not required to discuss each piece of evidence in the medical records. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Moreover, the ALJ summarized Niston's statements at Dr. McCollum's examination about suicide and determined that her thoughts about suicide in the past (but without an intent or plan), in light of the absence of any records noting psychological decompensation or hospitalization, did not provide support for Dr. McCollum's finding that Niston could only deal with minimal pressures in the competitive work setting. (Tr. 24.) This finding does not constitute reversible error.

At the Court's hearing, Niston relatedly argued that the ALJ erred in failing to call Dr. McCollum as a witness or ordering him to answer post-hearing interrogatories. Niston claims that the two providers the ALJ chose to credit as to mental limitations (the state agency psychological consultants) both noted that Dr. McCollum's opinions were confusing as to what he meant by an inability to handle pressures in a "competitive" work setting. (Tr. 70, 78). According to Niston, the ALJ erred in failing to call Dr. McCollum as witness to elaborate on and clarify his opinions. An ALJ is not required to call a specific witness at the hearing or to order post-hearing interrogatories, as the decision to use medical expert testimony is within an

ALJ's discretion.  *Haywood v. Sullivan*, 888 F.2d 1463, 1467–68 (5th Cir. 1989); *see also Dominguez v. Astrue*, 286 Fed. App'x 182, 186 (5th Cir. 2008).

Furthermore, Niston has not articulated how she was prejudiced by the ALJ's decision not to call Dr. McCollum as a witness or to further develop the record as to his testimony regarding Niston's limitations as to working in a "competitive" setting.   Even though the ALJ did not find Dr. McCollum's overall opinions persuasive, he still ultimately imposed mental limitations in the RFC regarding work-related pressures; he found Niston was only able to work in a "lower stress work environment, without quotas, a fast pace, frequent changes, or frequent interaction with the public." (Tr. 24.)

Finally, Niston argues the ALJ failed to articulate why his mental limitations in the RFC would "cancel out" her depressive episodes and allow her to sustain work.  But again, it is Niston's burden to produce evidence that her depression prevents her engaging in any work and is disabling.  As noted by the ALJ repeatedly, the record is full of notations regarding Niston's cooperative demeanor and stable mood and the lack of any record of psychiatric hospitalizations or decompensation.   Additionally, the medical records reflect virtually no treatment for this condition.  In summary, Niston has not identified any reversible error as to the ALJ's assessment of her mental limitations, and substantial evidence supports the ALJ's finding as to Niston's mental RFC.

## IV.  Conclusion and Recommendation

Based on the foregoing, the undersigned concludes that the that the Commissioner did not commit any reversible legal error in the underlying administrative proceedings, and the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

     SIGNED this 16th day of August, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE